and Ryan Willis on behalf of Appellant Kacey Hicks. With me at the table is Katie McCoy, my colleague. You're from Raleigh? Yes, Your Honor. And you're appointed in this case? Actually retained for this appeal, Your Honor. Retained? Yes, sir. Good to have you. Appreciate your work. Thank you. Go ahead. Thank you. Your Honor, we would argue to the Court that a conviction for maintaining a drug-involved premises requires that the illicit drug activity be a primary purpose of the premises in the context of a residence. As in the facts of this case, Mr. Hicks resided at the address at 1031 Maple Street in Henderson, North Carolina. And that, as other circuits have looked at this issue of purpose, have found that in the context of a residence where someone is sleeping. But this argument just goes to one count. It does. Count four. Count four. That's correct, Your Honor. But you were convicted on count four. Why is it you're going after that count directly first thing? Your Honor, when we received the order from the Court of oral argument, this was the issue that the Court addressed. We identified that for you. Yes, Your Honor. Okay. Well, those other issues are important, too. Of course, Your Honor. And I'm happy to address other issues. Yeah, that's good. Yeah. But other circuits and the Fourth Circuit have said in the context of a residence where someone is sleeping, residing, that the purpose that's required for 21 United States Code 856-A1 does not have to be an exclusive purpose. Clearly, that would sort of eviscerate So, what you're saying, the instruction was flawed? Well, I would argue both that the instruction was flawed. However, trial counsel did not object or offer any alternative instruction. So, the instruction was, we were reviewing your claim for plain error? Well, I would also argue that because trial counsel made a Rule 29 motion on sufficiency of the evidence as to count four, that there is an argument that there is insufficient evidence that the purpose element of 856-A1 was met on the facts of this case. And that both for examining the sufficiency of the evidence in the Rule 29, that the court should adopt a primary purpose standard. This would follow, I would argue to you, the court's decision in U.S. v. Stallworth. It would not be inconsistent with the court's opinion in U.S. v. Waller. I thought in Stallworth, and I realize it's unpublished, right? We're talking to you about this because we don't have anything published on it. But in Stallworth, we rejected the defendant's argument for a primary purpose. He had said sole or primary or exclusive and we rejected that. We said specific purpose there. And I think trying to get at this idea that it can't be incidental, right? Yes. To have something as the purpose, it has to be your intention. It has to be why you're doing it. But it doesn't have to be the only reason. And courts have kind of stumbled around looking for an adjective that feels right to describe what it means to be not incidental, not exclusive. You say primary. I'm a little concerned primary means like the most important, which may also not capture what the statute is saying. Help me. How do we capture what the statute is saying, other than obviously just instructing on the statute? Well, the statute says the purpose. Right. Right. So, I mean, I think and even the government sort of argued in their response that that actually arguably could be a higher standard. But every court to address it. You say it has to be a single purpose? No, Your Honor. It can't be living there? I would not assert that in every circuit, including the Fourth Circuit, that's addressed that. Right. Because then, essentially, all you would take to it. But it can't be more than one purpose. Correct. It can be more than one purpose. And here, there were like four purposes or two purposes? Well, there's more than two. I think there's evidence that the defendant had a barbershop in his house. Barbershop in a studio? In a studio. That's right. And that he resided there. In a drug business. And, well, and his mother was residing there. And he lived there. Correct. Mother lived there. Or had recently moved in. I think she had taken ill and had moved in and he was It was a residence. It was a residence. It was a valid residence, but the business, maybe there were, it was a business that had four divisions, or three divisions, had a drug business, a barbershop, and a music business. Just one business. So, it's a purpose, the drug stuff. I think the court has to require that it be more than just You say there's not enough evidence to prove it was a drug business. That it was not, well, let me take a step back. What this statute, I would argue to you, Congress was trying to address back in 1986 was the problem of crack houses, of properties being used for the purpose of manufacturing, distributing, and using drugs, and the harm that that caused to a neighborhood. At that time, Congress had already criminalized possession of controlled substances and possession with intent to distribute controlled substances. They're addressing a separate harm in how a property is being used to essentially be a drug store, to be a storefront for the distribution of drugs and the manufacture of drugs and potentially the use of drugs. A number of individuals congregated. It doesn't have to be all three of them. Any one of the three would be enough. There's an or in there, too. I agree. But what's not there, clearly in the statute, is possession. That was not one of the illicit purposes, or possession with intent to distribute. Well, they found, what, multiple bags of marijuana? Yes, sir. And they found a gun? Ammunition. A couple of guns, three guns, firearms. Yes, sir. Yes, your honor. They found cocaine. Multiple bags of cocaine. Absolutely. Multiple bags of cocaine. They found cash money, $400. I believe that's correct, your honor. All that's evidence of a drug business. It's definitely evidence of possession with intent to distribute? It's evidence of a drug business, distribution of marijuana and cocaine. It's evidence of a drug business. Absolutely. And you had the BMW out there that had all been shot up. That's evidence of a drug business. But is that evidence to establish that 1031 Maple Street? You found ammunition? Absolutely. I mean, we've got lots of cases that talk about drugs and guns going together. And there are statutes that address that. But what the court has to consider is what is required. So what's required, but the instruction that was given was not objected to? We concede that, your honor. So you want us to rewrite the instruction and say that it was plain error not to give an instruction that was never offered? The focus of my argument, your honor, is on the sufficiency of the evidence for count four. And although... The sufficiency of the evidence, I've just recited to you some of the evidence, and that sounds like you lose on the sufficiency of the evidence. That there was lots of evidence that at least a purpose of that residence or location was a drug business. They got all this cocaine and marijuana and guns and all that. So I think the problem, though, is establishing that the property, that 1031 Maple Street... Large amounts of case money go with drug distribution. And I would concede the jury considered that evidence and convicted the defendant of count two, the possession of intent to distribute. But what we wouldn't concede is that evidence of what was found during the search warrant on a particular day is sufficient to then say that Casey Hicks maintained that premises for the purpose of manufacturing, distributing, or using illicit drugs. We would contend that there has to be additional evidence of frequency... What if we add all of that evidence? So there's the evidence of the drugs there, the materials for cooking crack, and the scales, the baggies. There's also evidence of two controlled purchases. Just in one week, though, it's a short time, and the defendant's own counsel elicited testimony that there was foot traffic, significant foot traffic to and from the house. If we consider all of that, now, is that enough to make it, at least temporarily, a purpose of maintaining the house was either manufacturing or distributing drugs? So with regard, I agree with the court. We've got additional evidence because there's evidence elicited that Detective Woodleaf testified about these two controlled purchases from the residence over the course of the same week, I believe. I would argue to you that, again, what this statute is trying to criminalize is a property that is causing a danger to the community by the frequency and the type of illicit activity with regard to distribution and manufacturing. And that two controlled buys in one week with evidence that the defendant's brother had recently moved in is not enough to meet the threshold of that it is, whether it's a significant purpose or a primary purpose, that that is what the defendant used the house for. Drug dealers have to sleep somewhere. But he has to make it somewhere because he has the materials to make crack. No crack was found in the house during the search. He has the materials to make it, and there were two controlled purchases at that house. So why is that not enough evidence to say that the house was his, that's his business location for making, for cooking crack? I would argue to you that the evidence isn't insufficient to say that he actually cooked crack at that residence. There's testimony that they found powder cocaine, which is clearly an ingredient for crack, and isotrol. A cutting agent. A cutting agent for powder cocaine. There was no testimony in the trial that isotrol is a, used to cook. There's also no crack found. So I would argue to you that the evidence of actually, Someone would have to draw, I mean, we have to look at the evidence in the light of the government, draw all the inferences, and we've let, we've said in other cases, you can draw inferences from the presence of these materials and the packaging materials, et cetera, about distribution going on there, at a minimum, if you have packaging materials. Was there an argument that he was distributing somewhere else? There's no evidence that he was distributing somewhere else. I think where the problem becomes is, What if we agree with you? What good does it do this fellow? Fair question. He got confirmed sentences, didn't he? He was convicted of count one, which was the 922G possession of ammunition and a firearm by a felon. And if you look at his pre-sentence report, it was that offense, although the offenses were grouped, that really drove his sentence. So the only way out there is the warrant or some version of that, right? And so can I ask you a question about the warrant? Yes, Your Honor. What is your best argument that everything else aside, Leon just doesn't foreclose relief here? I mean, that strikes me as the hardest question for you. Like assume this warrant could have been better, assume they did, yeah. What's your best argument against the application of Leon? I mean, candidly, Your Honor, I just don't have a great argument on the warrant. I would concede that is not our best argument. And so I would, I mean, I... Fair enough. You've got the record you've got. Yes, sir. Thank you. But what good does it do if we say count four conviction is flawed by bad instruction? Complaint error satisfied. Or that it was, you know, that Judge Boyle got it wrong on the Rule 29 motion on count four. Well, Judge Boyle was wrong, but it's concurrent sentences, right? That's correct. I would be sending it back to do anything or say it's harmless error? I would argue it would justify a new sentencing hearing in front of Judge Boyle. I would argue it justifies a new sentencing hearing for Judge Boyle to consider... Well, you might be in a new trial on count four. You want to retry count four? Well, candidly, Your Honor, the evidence with regard to count one, particularly the ammunition found in the home, separate and apart from the firearms that are found in the house, I mean... Pardon? So there are firearms found in a car, firearms found in the house. The jury, what's interesting about this case is there is a 924C, count three, possession of a firearm in furtherance of count two. The jury acquits Mr. Hicks on that, which is a firearm... We don't look at the way they acquitted him. What's up here are the ones he was convicted on and sentenced on. Yes. You're asking me... I'm not sure we can look at what he was acquitted of and everything. The jury convicted him of three charges, concurrent sentences. If one of those is flawed, what do you want to do? Do we say it's harmless error, or do we send it back and say, you can retry it? Well... We'll tell the court, let's try you on count four. And you might get more than what he got the last time. That's possible. I mean, I agree that there are concurrent sentences. He was convicted of count one. That count drove his guideline sentence. But I would argue to you... It's an academic question right here. It's not... Something that's not very meaningful. Well, I would argue to you that a vacating count four would justify at least a new sentencing hearing so that the court could consider... You'd get the judge to look at the sentence again. Correct. Okay. But you're not interested in a new trial. Well, I've sort of conceded to Judge Hayden's question that the search warrant and the ammunition that was... You're not going to give it up for your conviction or your crime. I don't think he'd want to go over and do that. No, but I want to be cut to the argument that I think is actually the most pertinent for the court to consider and not waste the court's time on arguments that I don't know that there's a good faith basis for me to say we win on them. I thought your argument for maintaining a dwelling was, there's insufficient evidence. You don't want a new trial. You want us to say, he can't be convicted of that on the evidence. That's correct. That's right. You want to get rid of that conviction. That's correct. And then under sentencing package, he should get a new sentencing if that's what we were defined. That's correct. And honestly, we did not brief the issue of the other circuits and the standards of primary or significant. You plant your feet on no new trial, a new sentencing. New sentencing because we are arguing there's insufficient evidence on count four and we're reviewing the statute. If the judge helps you out there, you don't want a new trial. You don't need a new trial if there's not enough evidence, if the judgment of acquittal should be granted. Correct. All right. Let's see what the government has to say. Thank you. Mr. Bubar. Thank you, Your Honor, and good morning, and may it please the court. The Fifth Circuit case, Roberts is on point for both setting the standard for what should be considered for the maintaining a dwelling count as well as considering the jury instruction issue as well. In that case, the 1995th Circuit case, Roberts, which is in the government's papers but wasn't explored deeply, it talked about the fact that the jury should be instructed on the statutory language for the elements. And that's what it held in that case. You can say the instruction was wrong? Pardon me, Your Honor? You concede the instruction was erroneous? No, sir, Your Honor. The government and trial counsel agreed, it ought to be waived, first of all. Counsel agreed, not just didn't object, but pre-trial, in their pre-trial filing, which I believe is joint appendix one. Would it be fair to say that the failure to object to the instruction has been waived by the government because you don't raise it in your brief? Well, the government didn't object either. Nobody objected. We put them forth together. Right, so you don't... We think they were proper, Your Honor, yes. No, but... All right. I think what Judge King might be referring to, the government does not allege that the Rule 29 issue was forfeited, right? I didn't see an argument in your brief that he waived his Rule 29 argument. That's correct. I was speaking only about the jury instructions, Your Honor. I apologize. Well, you don't challenge... They don't say they didn't waive or object to the jury instruction. That's what I'm questioning. The jury instruction was not raised below and was agreed to, and the government would say that it was proper to instruct on the statutory language for the purpose of. There was no modifying language. Do we have any right to look at, then, on this appeal, to look at the jury instruction and say, this isn't the right one, you ought not be dealing with it, doing this anymore? From the government's perspective, they waived the jury instruction issue. All right, but the government wanted us to give you, tell you whether that instruction is good or bad. Your Honor, I don't believe this is the case to do that. You need to find another case for that. Is that what you're saying?  Statutory language for the purpose of, as Roberts said, now, Roberts has been cited by this court a number of times in unpublished decisions, in Stallworth and in Wirth in recent years, and that court held that it's common English for the purpose of is understandable by the jury and that it's understood to mean a primary purpose. That's what Roberts originally said. Now, that standard has been changed over time in the Fifth Circuit. In 97, there was the Soto-Silva case, and other circuits have followed, the Sixth Circuit has followed that, a significant purpose or an important purpose. The Ninth and Tenth Circuits have said, no, it needs to be a primary or a principal purpose to the extent there's even a meaningful difference between the different phrases. Ninth Circuit questions whether there's even a difference. But for the purpose of this case, they were instructed on the highest possible, there was no modifying language. It was the highest possible standard for the purpose of, and it was, they were instructed several times. But do you just think we can say it can't possibly be plain error to quote the language of the statute verbatim? I don't believe it can be plain error in this case, Your Honor, because we followed, again, agreed upon by both parties, the elements of the statute are for the purpose of distributing a controlled substance. And that accomplishes the work, according to Roberts, the seminal case that accomplishes the work of instructing the jury. On the sufficiency issue, can I ask you, so, I'm not sure this is this case, but would you probably concede with me that the language of A-1 is kind of a mess and sort of hard to understand? Because, so, knowingly, I'm just trying to imagine, can I take a step back, is using drugs for my own personal use in the place that I live covered by this statute? Use is covered, Your Honor, I do believe, I haven't focused on this issue for this brief or in this case. So you're telling me that every single person who recreationally uses drugs in their own house or apartment is violating this statute? Your Honor, I don't believe so. And I do. I hear that. Why not, though, given the language of this statute? Because I don't believe that you, in your hypothetical, are maintaining a dwelling or a facility or a outhouse for the purpose of use. If, if I may, Your Honor, if it's a house for recreational use, where you're inviting your friends over and you're inviting your neighbors over and you're inviting people from the town over and you're inviting the whole world over to come use drugs, there are cases like that. The building was used for the purpose of use. If you're doing that, you're distributing. Maybe you're not. Well, if you're giving somebody a drug to use, you're distributing. We could certainly get to the place, Your Honor, where people bring their own drugs. This is a place where we can all come together and say we can all use drugs together in this building. Everybody use their own. Well, that's, but the statute covers that. It does. And that makes a crime. Yes, Your Honor. So to the extent. Yes, Your Honor. You're saying the Department of Justice doesn't prosecute that? I have not said that, Your Honor. Oh, I thought you just, you said you didn't think it was a violation. I was simply following Judge Hayden. Judge Hayden's. Let's just take a really. The statute covers it. Well, so the really simple example of the. The purpose is to use drugs, it's covered. I can see a scenario where the use is absolutely covered, yes, Your Honor. So I just want to make sure I understand this correctly. The government does not think that when a citizen is smoking marijuana in his or her apartment, personal use marijuana in his or her own apartment for this, is under this stat, is not covered by this. Not every single person who smokes marijuana in their house or apartment is violating the statute. And to the extent they're not, the government's theory in grounding that in the language of the statute, is that although that is their apartment that they rent or lease or whatever in the language of the statute, and although they are using drugs there, they are not using that place or renting that place for the purpose of using drugs. There would have to be sufficient evidence, Your Honor, that the residence or the building or the structure is being used for the purpose of. And it cannot be, courts have been universal, this court has recognized that in Stallworth, that it cannot be an ancillary purpose or an offshoot. It has to be. It has to be the sole purpose. No, it does not. It does not have to be the sole purpose on one hand, and it cannot be an ancillary purpose on the other hand, Your Honor. It has to be something, and I believe Judge Rushing has pointed out, it has to be something in the middle that courts have attempted to elucidate. But Roberts has said, for the purposes of jury instructions, that courts need not specifically say in the jury instruction that it is common language and it is sufficient. The evidence, as we've already somewhat reviewed, is plentiful as for a conviction here, Your Honor. Do you think this evidence would be sufficient under any of the standards in the circuits? I know you say in your brief the jury was told the purpose, and that's arguably a higher standard if no one told them the means A in this context, but do you think even if we adopted primary purpose or significant purpose or specific purpose that this evidence would be sufficient? Yes, Your Honor, because it would be a primary or principal purpose, and again, the evidence is that the evidence of both narcotics as well as distribution are plentiful throughout the residence. It's the defendant's residence. And do you think your evidence is better? I mean, there's some evidence here of, so I'm looking at the verbs in the last clause of the statute, and it says manufacturing, distributing, or using, and what's weird about this case is that there's some evidence of manufacturing and there's some evidence of distribution. Well, first question, do you think your evidence is stronger on the manufacturing or the distributing prong? I agree with my colleague that there is not a lot of evidence of manufacturing. There is plentiful evidence of distribution, Your Honor. While there is the inositol powder, three bottles, of course, and that is the beginning and end of sort of the manufacturing. Do you know of any cases, this comes up in like the continuing criminal enterprise context, do you know if there are any cases about whether the jury has to unanimously agree on whether it's a manufacturing case or a distribution case? Because I can imagine a case like this where the government has evidence of both and six jurors think the evidence is sufficient of manufacturing, but insufficient, you know, you can imagine that. Do you know if there's any case that's confronted the question of whether the jury has to agree on which of those it is? As to this statute, I'm not aware of that, Your Honor. And certainly the evidence was plentiful about distribution. There were two controlled purchases that led up to, and just in the days before the search warrant. Obviously, that was the place that the defendant wanted to conduct controlled purchases was his home. It wasn't around the corner. It wasn't at some other building or some other, in his car. Even there, is it a bright line? Say I'm a drug dealer. If I sell drugs, and I, 99% of the time I sell drugs on a corner or some other place. But one time, so I'm definitely a drug dealer, I'm in the drug distribution business. But I overwhelmingly sell drugs somewhere that is not my house. If I sell drugs a single time out of my house, does that mean that I maintain my house for the purpose of distributing drugs? Your Honor, I would point you back to the plentiful case law. Again, not in the Fourth Circuit, not before this Court, but across the country. For the purpose of it, it has to be an important, a significant, a primary, a principal purpose. Okay, so the government agrees that even if I am a drug dealer, the mere fact that I sell out of my house one time doesn't trigger this statute. It would be hard to see how one time would be using the house for the purpose of distribution of narcotics. I would also add, if I may, that the evidence included multiple digital scales. Those are certainly evidence of the distribution of narcotics. Two were in the kitchen. One was in the recording studio, along with other dime bags of marijuana, individually packaged for sale. Your position is there's plenty of evidence? A great deal of evidence, yes, sir, Your Honor. And it's more to distribution? Yes, Your Honor. But those statutes are written in the disjunctive. There's lots of cases of that. You're charged in the indictment in the conjunctive, with the and. Yes. And, but the proof, the proper instruction to the jury, is in the disjunctive. All the jury has to define is manufacturing, or distributing, or using, and that he's guilty. Yes, Your Honor. But it has to be a unanimous verdict. Yes, Your Honor. And it was in this case, both to cocaine and marijuana. There was also the defendant's admissions that the marijuana was his. There were images of the defendant and his residence. Do you have a drug wars out there, where all that BMW all shot up? It's very concerning, Your Honor, certainly. The BMW was shot up. There were shell casings found in the BMW itself. The BMW was properly searched, and that issue was waived as well. It was not raised below, and I'd like to point that out. I would also point out, Your Honor, this came up very briefly toward the end of argument of my colleague, but there was plentiful evidence for the 922G count, setting aside the firearms found in the BMW. There was a firearm found within a foot of the hand of the defendant when the search warrant... The band. Beg your pardon, Your Honor. The band. Yes, Your Honor. Was it loaded? I believe that it was loaded, Your Honor. You believe, you don't know. There was a magazine. What on the record here, was it loaded or not? There was a magazine. What was the evidence? Beg your pardon, Your Honor. What was the evidence? I believe the evidence came in that it was loaded, and that there was a magazine in it. Was there, what, a .38? It was a 9mm, Your Honor. 9mm. Now, that, again, the defendant was under the bed with his hand, you know, perched right between, the mattress had to be pulled back. They wanted to see what that, what was sitting there, but that together, the plentiful ammo was all sufficient along with that firearm to convict on 922G, although the actual search warrant issue for the BMW was waived below, was not raised in the suppression motion. Your Honors, unless there are any other questions for the government, I will conclude my remarks and ask that the Court affirm the defendant's conviction. We appreciate you. Thank you. Thank you very much. Mr. Willis, you got anything else to say? Briefly, Your Honor. Your Honor, I think the question for the Court, again, is establishing, did Casey Hicks maintain this premises for the purpose of distribution or manufacturing? And the evidence of what was found on the execution of the search warrant on a particular day of quantities that could be considered, you know, more than personal use, is evidence that the jury could consider. We also have the evidence of the controlled purchases, but the concerning part for the defendant in that case is that controlled, those controlled purchases by that cooperating informant, the government elected not to call that cooperating informant at trial. Detective Woodleaf was allowed, over objection, to testify that the complainant, the cooperating informant, said Casey Hicks was selling narcotics at 1031 Maple Street. Over objection. Are you arguing an admissible hearsay? That's a confrontation clause. Confrontation clause. Well, hearsays, on any hearsays, you could argue a confrontation clause. It was a confrontation clause problem, Your Honor. But it, was there an objection to any of that? There was. There was an objection. And it was allowed in, and the government's argument is it was offered for a non-hearsay purpose. But that testimonial Sixth Amendment violation of Casey Hicks is selling narcotics at that address was offered into evidence with no limiting instruction to the jury. Did the defense request a limiting instruction? Did not. And then the evidence of the controlled purchases was just, there was, Detective Woodleaf saying there were two controlled purchases. Maybe you should have been trying the case. It would have hired you too late. I'm sorry, Your Honor? Maybe you should have tried the case. I say they hired you too late. I agree. But unfortunately, I'm here arguing to you. And as you have to argue, you're stuck with the record that is the record. But we don't have, what we don't have in those controlled purchases is that Casey Hicks actually sold narcotics to the cooperating informant. We have somebody did, and there was his brother, Vincent Hicks, who had recently moved in, and we would argue. Two controlled buys. And they put in evidence saying two controlled buys. They had two controlled buys, and that's it. From that house. Casey Hicks. That's what they used for the search warrant. That's correct. But Casey Hicks had to have the purpose of maintaining the premises for distributing or manufacturing. Well, he lived there. He lived there. Well. And he had, he had sufficient drugs for the jury. The jury could reasonably conclude that the person that lived there was running the business. But again, I think what the court's focus is, what I would argue to you is there's insufficient evidence that the property itself, that that address, was being used on a frequent basis for manufacture or distribution. I would ask the court to consider, Well, the statute doesn't say a frequent basis. It says permanently or temporarily. Now we have to square what does it mean to do something for the purpose of distribution and temporarily, surely it means more than just once, as the government conceded. But you know, here, I don't know that you get very far in just saying that it happened a couple times when you have this other evidence of distribution. What I would say, I mean, another point I would ask the court to consider is guidance is the enhancement in the sensing guidelines in 2D1.1, B12, that deals with maintaining a dwelling for manufacture or distribution. The application, note 17, talks about the court should consider frequency and that it be a primary purpose. But we can't use the guidelines commentary to interpret the statute, right? Congress told the commission, Add something to the guidelines because we have this statute already. And arguably, the reason the commission added those sorts of qualifications is because courts were interpreting the statute that way, perhaps. But I think it's backwards to use the guidelines to interpret the statute. No, I agree. I mean, I think the court can consider that, right? To your point that other courts, other circuits have adopted that test, the primary purpose and frequency. But I would argue to you there has to be more evidence than drugs in the house on one day and two controlled buys within the same week to meet what Congress was trying to criminalize here, which was crack houses that are a danger to a community. Because a drug dealer could deal drugs, for the most part, other places and on occasion at his house. I don't know that that's what Congress was focused on in passing 856A1. It's covered by the possession with intent to distribute that the defendant was convicted of. There has to be more for it to be the premises is being used for the purposes of distribution or manufacture. Thank you. Thank you very much. We appreciate your work and we appreciate the work of both of you and we wish you all the best. If we could do so, we'd come down and re-counsel in the well of the court. But we're not doing that, unfortunately, at the present time. When you come back, we'll do that. Thank you. We'll have you back soon. Thanks very much.
judges: Robert B. King, Allison J. Rushing, Toby J. Heytens